UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


INTELLECTUAL SCIENCE AND
TECHNOLOGY, INC.,

     Plaintiff,                                HON. AVERN COHN

-vs-                                    Case Nos.   06-10406
                                               06-10409
SONY ELECTRONICS, INC.,                  06-10412
JVC AMERICAS CORP. and
PANASONIC CORPORATION OF
NORTH AMERICA,

     Defendants.
_____/

## MEMORANDUM AND ORDER
## ADOPTING REPORT AND RECOMMENDATION OF SPECIAL MASTER
## AND
## DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
## AND
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF
## NONINFRINGEMENT
## AND
## DISMISSING CASE

### I. Introduction

This is a patent case. There are five (5) patents in suit divided into two (2)

groups, each group having a paradigm patent. As will be explained, the patents apply

to apparatuses for information processing that have a "multitasking" capability. The

accused devices are generally described as dual CD players and recorders.

Significantly, both patents purport to solve problems in the claimed subject matter in the

context of computer systems, not stereo equipment. Defendants filed motions for

summary judgment on the grounds of invalidity and non-infringement. The motions also

implicated claim construction.  The motions were referred to a special master to issue a

report and recommendation (R&R).  In the end, the special master recommends that

judgment be entered in favor of defendants on the grounds that the patents, properly

interpreted, do not capture the accused devices.  Before the Court is plaintiff's

objections to the R&R.

For the reasons which follow, the Court rejects plaintiff's objections and adopts

the recommendations of the special master for the reasons stated in the R&R as

supplemented by this memorandum.  Accordingly, defendants' motion for summary

judgment of invalidity will be denied, defendants' motion for summary judgment of non-

infringement will be granted, and this case will be dismissed.

## II.  Background

### A.  The Patents-In-Suit

There are five (5) patents in suit divided into two (2) groups.  The first group,

according to plaintiff, covers a dual drive CD player and recorder.  More particularly,

they are claimed to cover a read-read device which simultaneously reads from two

turntables.  The representative patent of the first group is U.S. Patent No. 5,748,575

(the '575 Patent), Information Processing Apparatus Having A Multitasking Function

With One Or More Optical Disks.  The Abstract reads:

> A high-performance optical information processing
> apparatus having various hardware for arriving at
> multitasking function.  The optical information processing
> apparatus provides disc-loading and -unloading flexibility,
> allows a user to launch a software program or
> simultaneously several software programs directly from an
> optical disc and/or several optical discs stored therein,
> eliminates tedious and time-consuming software installation,
> affords a kind of copyright protection to software, and

2

alleviates the burden of accessing a hard-disk drive during the process of information reproduction.

The second group, according to plaintiff, covers a dual drive CD player and recorder. More particularly they are claimed to cover a read-write device which reads from a CD on a turntable and a recorder to a CD on a second turntable. The representative patent of the second group is U.S. Patent No. 6,222,799 (the '799 Patent) High Performance Information Processing Apparatus Having Multitasking Functions. The Abstract reads:

> An information processing apparatus having hardware components that include plural turntables, plural head units, plural decoding units, at least one encoding unit, and a system control unit. These components are adapted in such a manner as to afford (1) true multitasking in information reading and writing, (2) direct communication for information to be exchanged directly within the information processing apparatus, (3) disc removability for information to be stored as off-line archives and to become transportable between computer systems, (4) separation of user-created data from program files for eliminating time-consuming file-defragmentation processing and for conveniently safe-keeping the user-created data, and (5) capability of launching favored software programs directly from original software discs. In essence, the apparatus provides multiple and highly-improved functions of secondary and tertiary storage that cannot be obtained from any combinations of conventional hard-disk, floppy-disk, optical-disc, and backup drives.

B. The Defendants And The Accused Devices

Initially there were five (5) defendants and a multitude of accused devices. Now there are three (3) defendants: Sony Electronics, Inc., JVC Americas Corp. and Panasonic Corporation of North America.

The representative accused devices[1] are

First Group

Sony RCD-W500C
Sony RCD-W1
JVC XL-R5000BK

Second Group

Sony RCD-W500C
JVC XL-R5000BK

The accused devices are audio CD player/recorders of various configurations.

C.  The Claims-In-Suit

1.  Claim 1 of the '575 Patent

Claim 1 of the '575 Patent is the paradigm claim for the first group of patents.  It reads:

> 1.      An information processing apparatus with multitasking function, the information processing apparatus comprising:
>
>    (a)      a plurality of turntables, each comprising a disc-setting table for mounting an optical disc;
>
>    (b)      a plurality of optical units, each comprising a
>
>    driving means
>
>    and an optical read head
>
>       wherein said driving means is provided for moving said optical read head in a radial direction of said optical disc to a predetermined disc position on a surface of said optical disc;

---

[1]The facing pages of the service manuals for each of the accused devices are attached as Exhibits C-1, C-2, and C-3.

4

(c)     means for simultaneously controlling a plurality of said driving means to move a plurality of said optical read heads

to a plurality of predetermined disc positions on at least two optical discs for retrieving information stored thereon;

(d)     a plurality of signal-process systems for converting a plurality of information sets retrieved by said plurality of optical read heads

from a compact disc format to the original state of the information; and

(e)     data transmitting means for transmitting a plurality of the information sets converted by said plurality of signal-process systems

to a host computer.

2.  Claim 4 of the '799 Patent

Claim 4 of the '799 Patent is the paradigm claim for the second group of patents.

It reads:

4.      An information processing apparatus comprising:

(a)     a structure;

(b)     a plurality of turntables disposed within said structure,

said turntables each being rotatable about a respective one of central axes and having means for mounting at least one disc thereon;

(c)     a plurality of head units each having

a driving means and

a head-means group

each of said driving means being
provided for moving a respective
one of said head-means groups
in a direction perpendicular to at
least one of said central axes,

wherein each of said head-
means groups comprises at least
one optical head means each for
interacting with a disc surface;

(d)     at least one decoding unit each being provided
for decoding a set of encoded information retrieved by
one of said optical head means;

(e)     at least one encoding unit, each being provided
for encoding at set of information to be stored; and

(f)     means for simultaneously controlling said
plurality of head units, said at least one decoding unit
and said at least one encoding unit to process
information in multitasking.

## D.  The Pending Motions

Inadvisedly the Court, rather than dividing pretrial into two (2) phases – claim

interpretation first and dispositive motions second – allowed the case to go forward on

defendants' motions for summary judgment on invalidity and summary judgment of non-

infringement.  The infringement motion also implicated claim construction.  All of this

made for a more confused process.

As noted above, these motions were referred to a special master for an R&R.

The Table of Contents of the R&R is attached as Exhibit A; it displays the scope of the

R&R and the special master's recommendations on claim construction, invalidity and

infringement.  Attached as Exhibit B is a chart displaying the ambiguous words and

phrases in the paradigm claims as identified by defendants, the parties' respective

interpretations, and the special master's recommended interpretations.

## E. The Special Master's R&R

As can be seen from the Table of Contents of the R&R, the special master in a single report recommends the interpretation of the identified ambiguous words and phrases (the Markman[2] phase), recommends that the summary judgment motion on invalidity be denied, and recommends that the summary judgment motion on non-infringement be granted.

### 1. Claim Construction Recommendations

Particularly, the special master recommends that the following claim construction be adopted:

#### a. The '575 Patent

1)      "multitasking" (of the 575 patent claim 1) be construed as a required element of claim 1 of the 575 patent, and that it be construed in accordance with its stated definition at 3:23-27 of the 575 patent, to require the launching or execution of software from an optical disc as at least one of the multiple tasks performed in combination with some other task;

2)      "data transmitting means" (of the 575 patent claim 1) be construed to cover hardware capable of handling converted digital data that includes at least a high-speed system control bus, an ITDM, a wide-band host interface bus, and ROM/RAM (read only memory and random access memory), and structural equivalents to such hardware;

3)      "a plurality of signal-process systems for converting a plurality of information sets retrieved by said plurality of optical read heads from a compact disc format to the original state of the information" (of the 575 patent claim 1), be construed to include more than one signal-process system that does not merely convert data, but includes the

[2] See Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996).

associated functions necessary to convert the data from the state it is detected by the optical read heads (namely, from a format by which pits are formed on a coated polymer disc, such that the presence or absence of the pits can be detected by a laser of the optical read heads) and ready it for transmission to a host computer, including error correction;

b. The '799 Patent

4)      "means for simultaneously controlling" (of the 799 patent claim 4) be construed to require a combination of a system control unit that includes a microprocessor with both ROM, RAM and SRAM, with local control units (each containing a microprocessor, ROM and RAM), and structural equivalents that perform the function of "simultaneously controlling said plurality of head units, said at least one decoding unit and said at least one encoding unit to process information in multitasking";

5)      "multitasking" (of the 799 patent claim 4) be construed to require the launching or execution of software from an optical disc as at least one of the multiple tasks performed in combination with some other task; and

6)      "optical head means" (of the 799 patent claim 4) be construed to cover an optical head device that interacts with a disc surface by writing and reading from the disc using light, optics (lenses, prisms and waveplates) and photosensors, and structural equivalents that perform such interacting function.

R&R at p. 52-53.

2.  Invalidity and Infringement Recommendations

On the basis of the recommended claim construction, the special master

recommends that:

a.  Invalidity

1)      Summary judgment be denied as to the alleged invalidity of Claim 1 of the 575 patent and Claim 4 of the 799 patent because Defendants have not satisfied their burden on summary judgment to establish an absence of a genuine issue of material fact as to whether the paradigm claims are

anticipated by the Versions 2 and 3 of the NeXT Computer or whether the Versions 2 and 3 of the NeXT Computer constitute statutory prior art;

2)      Summary judgment be denied as to the alleged invalidity of Claim 1 of the 575 patent, because the defendants have not satisfied their burden to show that there is no genuine issue of fact as to whether the NeXT Computer had "a plurality of signal-process systems for converting a plurality of information sets retrieved by said plurality of optical read heads from a compact disc format to the original state of the information";

3)      Summary judgment be denied as to the alleged invalidity of Claim 4 of the 799 patent because a jury reasonably could find that evidence describing the NeXT Computer does not fully anticipate Claim 4 of the 799 patent, in view of the "optical head means" requirement.

4)      Summary judgment be denied as to the alleged invalidity of the paradigm claims of each of the 575 and 799 on the basis of the PMC-M2 device;

Id. at p. 53-54.

b.  Infringement

5)      Summary judgment be granted, in favor of defendants, that Paradigm Claim 1 of the 575 patent is not infringed by any Paradigm Product, due to insufficient evidence to establish the presence in the Paradigm Products of "data transmitting means for transmitting a plurality of the information sets converted by said plurality of signal-process systems to a host computer", as that clause has been construed;

6)      Summary judgment of noninfringement be granted,  in favor of defendants, as to each Paradigm Product, that Paradigm Claim 1 of the 575 patent is not infringed by any Paradigm Product, in view of insufficient evidence to establish that the Paradigm products fulfill the multitasking requirement of Claim 1 of the 575 patent;

7)      Summary Judgment on noninfringement be granted, in favor of defendants, as to each Paradigm Product, that

Paradigm Claim 4 of the 799 patent is not infringed by any Paradigm Product for the failure to establish the presence in the accused Paradigm Products of "means for simultaneously controlling said plurality of head units, said at least one decoding unit and said at least one encoding unit to process information in multitasking" and

8)      Summary judgment of noninfringement be granted, in favor of defendants, as to each Paradigm Product, that Paradigm Claim 4 of the 799 patent is not infringed by any Paradigm Product, in view of insufficient evidence to establish  that the Paradigm Products fulfill the functional multitasking requirement of Claim 4 of the 799 patent.

Id. at p. 54.

### III.  The Objections to the R&R

### A.  The Papers

The plaintiff's objections are set forth in Plaintiff, Intellectual Science And Technology, Inc.'s, Objections To The Report and Recommendations Of The Special Master, filed June 3, 2008 (Dkt. 62) (Objections).  The defendants' reply is set forth in Defendants' Reply To Plaintiff's Objections To The Report and Recommendations Of The Special Master (Revised), filed June 3, 2008 (Dkt. 60) (Reply).  The Objections and Reply are not correlated to the R&R or the Recommendations or each other.  This makes it difficult to follow the argument.

### B.  Defendants' Objections

Defendants do not object to any of the special master's recommendations.

### C.  Plaintiff's Objections

Plaintiff objects to the special master's recommendation as follows:

-      "multitasking" as an additional claim limitation in the '575 Patent.

-      limiting application of the '575 and '799 Patents to launching of

software programs

- the '575 and '799 Patents are not infringed by the representative products

As noted by the Court and conceded by the parties at the hearing on plaintiff's objections, the key to resolution of the case centers on whether the term "multitasking" is a required element.

## IV. Decision Regarding Claim Construction

### A. The '575 Patent's Words And Phrases

#### 1. "Multitasking" as a Required Element

##### a.

The special master recommends that the term "multitasking" as used in claim 1 of the '575 Patent be interpreted as a required element of the claim. This is because, as the R&R puts it:

> . . . a person skilled in the art would reasonably conclude "multitasking" was underscored as important in the specification, and it formed the basis relied upon by Patentee for securing allowance of the '575 Patent.
>
> The term "multitasking" appears no fewer than 45 times in the 575 patent. It is present in the title of the patent. It is used to characterize and distinguish prior art in the Background of the Invention. It is also mentioned in the Summary of the Invention of the 575 patent, where multitasking capability is identified as a primary objective of the invention at 6:13-24. On this basis alone, a person skilled in the art could regard the term as "necessary to give life, meaning, and vitality" to the claim.

R&R at p. 9.

##### b.

The plaintiff objects to the R&R's recommendation on the grounds that the

11

"Patentee clearly claimed a structurally complete invention in the claim body and used the preamble only to state a purpose or intended use for the invention," Objections at p. 4. Plaintiff cites <u>Symantec Corp. v. Computer Associates International, Inc.</u>, 522 F.3d 1279 (Fed. Cir. 2008) as support.

c.

As explained by defendants in the Reply:

> "Multitasking" has an independent significance in defining the invention. It was added to Claim 1 of the '575 Patent and then expressly relied upon to overcome prior cited art. It clearly gives life, meaning and vitality" to Claim 1 of the '575 Patent.

Reply at p. 4.

d.

<u>Symantec</u> does not call for a different result. In <u>Symantec</u>, the Federal Circuit found that the preamble language "did not have its own independent significance" and the prosecution history did not demonstrate reliance on the preamble language to distinguish the claimed invention form the prior art. Thus, the Federal Circuit did not find that the preamble limited the claim but merely stated a purpose or intended use of for the invention. That is not the case here. As the special master carefully explained, the term "multitasking" is an integral part of the claim and as such, must be interpreted as a required element. The special master's finding is correct.

2. The Scope of "Multitasking"

a.

With regard to the scope of "multitasking," the special master recommends:

> that the term multitasking. . .should be construed in accordance with its stated definition ["In the context of the

12

> present invention, multitasking or multi-processed <u>is defined as</u> referring to separate hardware control units that allow execution of separate or several hardware programs simultaneously."  '575 Patent at col. 3 ll 23-27] to require the launching or execution of software from an optical disc <u>as at least one of the multiple tasks</u> performed in combination with some other task.

R&R at p. 15 (emphasis added).

b.

Plaintiff objects to the R&R's recommendation on the grounds that the special master "limited the definition of multitasking to launching and executing software graphics" and that he

> improperly concluded that the term "software" and "software program" in the specification of the '575 and '799 Patents must include digital data that only computer software programs contain

and that

> the Patentee clearly recites the use of audio confirmation and the reading/conversion of digital audio information

Objections at p. 5.

c.

As pointed out by defendants:

> . . . IST's argument misses the point.  The special master did not, in fact, limit the definition of "multitasking or executing binary software programs."  Rather, his recommended construction makes "launching or execution of software programs" <u>one of the multiple tasks</u> performed in combination with some other task which could include processing digital data or digital audio software.

Reply at p. 9.

d.

The special master's interpretation is correct. The special master did not limit the definition of multitasking to only "launching or execution of software programs" as plaintiff suggests. Moreover, the definition of multitasking advanced by the special master was derived from the language of the patent itself, in which the term was specifically defined and consistently used.

### V. Decision Regarding Infringement

### A. Special Master's Recommendation

As noted above, the special master recommends that defendants' joint motion for summary judgment of non-infringement of the paradigm accused devices by the '575 and '799 Patents be granted. While each of the patents is separately discussed, the special master did not differentiate among the paradigm accused devices, assuming that each device has substantially the same characteristics without specifically so stating.

### B. The Law

The law of infringement is correctly discussed in the R&R at p. 7; the discussion will not be repeated.

### C. Discussion

### 1. The '575 Patent

### a.

As to the '575 Patent the special master found that

- insufficient evidence of "data transmitting means" to a host computer has been presented by plaintiff

and

- insufficient evidence of multitasking has been presented such as to require a trial.

b.

1.

The special master's discussion of the absence of proof of "data transmitting means" is found at pp. 44-48 of the R&R. There he says in part that plaintiff relies on paragraphs 93-95 and 102 of the Declaration of William R. Michalson, plaintiff's expert, and block diagrams found in the service manuals of the accused devices.

Paragraphs 93-95 and 102 of the Michalson Declaration read:

> 93. The JVC XL-R5000BK Paradigm Product has a "data transmitting means" that includes a control bus, an ITDM, a host interface bus, and RAM/ROM. Serial Output buses (i.e., control bus transmit control information (instructions) along circuitry associated with each optical drive. Serial input buses receive information from each optical drive to an ITDM for multiplexing subcode data which is then transmitted to the host bus interface. A line output select device, IC621, multiplexes audio information stream (CDE or CDR) for output by the unit. Internal ROM/RAM is provided to support program operations from each of the optical drives. (P's App. Ex. 26 (JVC XL-R5000BK Circuit Diagram), at JVCA000021).

> 94. The Sony RCD-W500C Paradigm Product has a "data transmitting means" that includes a control bus, an ITDM, a host interface and RAM/ROM. Serial Output buses (U, control bus) transmit control information (instructions) along circuitry associated with each optical drive. Serial input buses receive information from each optical drive to an ITDM for multiplexing subcode data which is then transmitted to the host bus interface. A/D D/A Converter IC500 multiplexes audio information stream (CD or CDR) for output by the unit. Internal ROM/RAM is provided to support program operations from each of the optical drives. (P's App. Ex. 24 (Sony RCD-W500C Service Manual), at SEL 000057).

95.    The Sony RCD-W1 Paradigm Product includes a control bus, an ITDM, a host interface and RAM/ROM. Serial Output buses (i.e., control bus) transmit control information (instructions) along circuitry associated with each optical drive.  Serial input buses receive information from each optical drive to an ITDM for multiplexing subcode data which is then transmitted to the host bus interface.  Playback signal selection device IC-109 multiplexes audio information stream (CD or CDR) for output from the D/A converter. Internal ROM/RAM is provided to support program operations from each of the optical drives.  (P's App. Ex. 25 (Sony RCD-W1 Service Manual), at SEL 000209).
. . .

102.    The structures referred to above in ¶¶93-95 for the accused Paradigm Product all perform the same function as the claimed "data transmitting means" (i.e., transmitting to the host computer), in the same way (i.e., through a time division multiplexed structure) to achieve the same result (i.e., transmitted information sets).  Accordingly, the Paradigm Products satisfy clause (e) as either a literal equivalent under "means plus function" or under the Doctrine of Equivalents.

2.

As to the foregoing, the special master states:

The Michalson testimony does not specify facts for his conclusions that each of the asserted features is present in the Paradigm Products.  There is no indication as to the specific structure in the Paradigm products relied upon by Michalson as corresponding to the claim elements (by way of example, Michalson does not annotate the circuit diagrams upon which he relies to point to any specific structural element).  Michalson does not explain the specifications of such element.  Michalson does not inter-relate the operation of such element relative to any other elements.  There is also no evidence or analysis to support that such structure would be equivalent to the claimed "data transmitting means" structure that includes a high-speed system control bus, an ITDM, a wide-band host interface bus, and ROM/RAM (read only memory and random access memory).

R&R at p. 47.

The special master concludes:

> As previously discussed, Claim 1 of the 575 patent has been construed to not require the presence of a host computer. Notwithstanding, plaintiff has not identified any structure (literally or by equivalents) in the accused Paradigm Product that performs the function of transmitting converted data in a form that would be intelligible to a host computer.

> In short, it is recommended that summary judgment be granted that Paradigm Claim 1 of the 575 patent is not infringed by any of the Paradigm Products, due to insufficient evidence to establish the presence in the Paradigm Products of data transmitting means for transmitting a plurality of the information sets converted by said plurality of signal-process systems to a host computer.

R&R at p. 48.

3.

The Reply explains why the special master's characterization of defendants'

position is correct:

> IST's Objections merely paraphrase the language from the Michalson Declaration and, without any analysis, argue that the Michalson Declaration provides a detailed explanation as to why the accused products meet certain claim limitations. (IST's Opposition, pp. 6-8). IST's Objections do not specify any record evidence to support that conclusory statement. Specifically, IST's Objections do not identify: (1) any particular structure in the schematics of defendants' Paradigm Products with any structural element required by the "data transmitting means"; (2) any inter-relation between the structures in defendants' Paradigm Products relevant to the "data transmitting means"; or (3) where, in the Michalson Declaration, Michalson identified in defendants' Paradigm Products any of the required structural elements corresponding to the "data transmitting means". The answer, quite simply, is that it is not there.

> IST also argued that the Michalson Declaration in combination with the understanding of a worker of ordinary skilled [sic] in the art, would meet IST's burden. (IST's

17

Objections, p. 6). This is simply unsupported attorney argument. There is no record evidence of what a worker skilled in the art would understand based on the Michalson Declaration.

Reply at p. 13-14.

c.

1.

The second ground for finding non-infringement of the '575 Patent by the

accused devices according to the special master is

Summary judgment of noninfringement be granted because there is insufficient evidence to establish that the Paradigm products fulfill the multitasking requirement of Claim 1 of the 575 patent.

The multitasking requirement means that:

The 575 patent be construed in accordance with its stated definition at 3:23-27 of the 575 patent, to require the launching or execution of software from an optical disc as at least one of the multiple tasks performed in combination with some other task.

As to the absence of multitasking in any of the accused devices the special

master states:

As construed, the construction of "multitasking" contemplates that at least one of the tasks, albeit not necessarily the only task, performed by the claimed apparatus is the launching and execution of software carried on a disc. The plaintiff has failed to satisfy its burden that the claim requirement of "multitasking" is met in the accused devices. Plaintiff has designated no facts and has not pointed to any evidence that supports that the Paradigm Products include any hardware for or otherwise performs the function of launching, executing or otherwise processing any software on any of disc.

R&R at p. 49.

2.

In arguing against the special master's recommendation plaintiff does no more than reargue the interpretation of the term "multitasking," as follows:

> Not only did the Special Master improperly import the term "multitasking" into the asserted claims, but he also further limited the definition of multitasking to launching and executing software programs. See arguments, <u>supra</u>. Consequently, the Special Master erred in reading the limitation of "software" into the paradigm claims. He improperly concluded that the terms "software" and "software program" in the specification of the '575 and '799 Patents must include digital data that only computer software programs contain.

Objections at p. 5.

### 3.

The defendants correctly note:

> The Special Master concluded with respect to both Claim 1 of the '575 Patent and Claim 4 of the '799 Patent that IST failed to present any evidence that defendants' Paradigm Products include any hardware for or otherwise perform the function of launching, executing or otherwise processing any software on any discs. (Report, pp. 49, 51, 52). He also concluded that IST presented no evidence to support a claim for infringement under the doctrine of equivalents.

Reply at p. 11.

### d.

The Court agrees with the special master. The Michalson declaration falls short in establishing a genuine issue of material fact as to whether the Paradigm accused devices contain a "data transmitting means" as called for in the '575 Patent or whether they perform "multitasking" as defined in the patent.[3] Simply put, Plaintiff has not

---

[3]Plaintiffs have admitted, albeit with some qualification, that the accused products cannot execute or launch software programs. <u>See</u> Counter-Statement of Disputed Facts (Dkt. 38) at ¶¶68, 75, and 85.

established that there are genuine issues of material fact which require this case to go to trial on the issue of infringement of the '575 Patent by the accused devices. Defendants are entitled to summary judgment on the claim of infringement of the '575 Patent by the accused devices.

## 2. The '799 Patent

### a.

As to the '799 Patent, the Special Master found that

- insufficient evidence of "means for simultaneously controlling said plurality of head units [etc]"

and

- insufficient evidence of multi-tasking has been presented

such as to require a trial.

### b.

### 1.

The special master's discussion of the absence of proof of "means for simultaneously controlling said plurality of head units [etc]" is found at pp. 50-51 of the R&R. There he says plaintiff relies on the block diagrams in the service manuals previously described, and paragraph 85 of the Michalson Declaration, which reads:

> 85. The structure referred to above in ¶84 for the accused Paradigm Product performs the same function as the claimed "means for simultaneously controlling" (i.e., simultaneously coordinating the operation and movement of the optical untis [sic]), in the same way (i.e., through control unit and/or related circuitry) to achieve the same result (i.e., coordination of optical units to achieve various features, i.e., Relay Play and Dual Play). Accordingly, the Paradigm Products satisfy clause (c) as either "an equivalent thereof" under "means plus function" or under the Doctrine of Equivalents.

2.

As to the foregoing, the special master states:

> The above statements in the Michalson Declaration are
> conclusory, and lack particularity.  Plaintiff does not provide
> any identification of structure in the Paradigm Products that
> corresponds with any of the required structural elements or
> their equivalents (e.g., a microprocessor with both ROM,
> RAM and SRAM) for a system control unit.  Nor does plaintiff
> identify structure corresponding with local control units (each
> containing a microprocessor, ROM and RAM).  There is no
> explanation for how the components in the schematics relied
> upon by plaintiff function or interrelate.  Further, there is no
> mention whatsoever of the *Graver Tank* function-way-result
> test or any other equivalency test for the analysis of the 799
> patent.  There is no evidence to address equivalency at all.

R&R at p. 51 (internal footnote omitted).

3.

The Reply adequately explains why the special master's characterization of

plaintiff's position is correct:

> With respect to the '799 Patent, IST's effort to establish that
> defendants' Paradigm Products include the "means for
> simultaneously controlling" limitation based upon the
> Michalson Declaration is even more deficient.  Here, the
> Michalson Declaration provides a single paragraph for each
> of the Paradigm Products containing his unsupported
> conclusion that each Paradigm Product includes certain
> structures corresponding to this "means" limitation (paras.
> 84, 125) (Report, pp. 50, 51), and a repetition of the Graver
> Tank mantra (par. 85 (Report, p. 50).
>
> The Special Master correctly concluded that these
> statements in the Michalson Declaration are "conclusory,
> and lack particularity"; do "not provide any identification of
> structure in the Paradigm Products that corresponds to any
> of the required structural elements or their equivalents"; do
> not "identify structure corresponding with local control units";
> and do not explain "how the components in the schematics
> relied upon by plaintiff function or interrelate."  (Report, p.
> 51).

21

Reply at p. 14-15.

c.

The second ground for finding non-infringement of the '799 Patent by the accused devices by the special master is the absence of any evidence of "multitasking." As stated by the special master:

> As with the 575 patent, as construed in the 799 patent, the construction of "multitasking" contemplates that at least one of the tasks, albeit not necessarily the only task, performed by the claimed apparatus is the launching and execution of software carried on a disk. The plaintiff has failed to satisfy its burden that the claim requirement of "multitasking" is met in the accused devices. Plaintiff has designated no facts and has not pointed to any evidence that supports that the Paradigm Products include any hardware for or otherwise performs the function of launching, executing or otherwise processing any software on any optical disc.

R&R at p. 51-52.

d.

The Court agrees with the special master. Plaintiff has not established that there are genuine issues of material fact which require this case to go to trial on the issue of infringement of the '799 Patent by the accused devices. Neither the circuit diagrams nor the Michalson declaration carry the day. Defendants are entitled to summary judgment on the claim of infringement of the '799 Patent by the accused devices.

## VI.  Conclusion

This case as described in the R&R is best summarized by the opening paragraphs of Defendants' Motion For Summary Judgment Of NonInfringement (Dkt. 27) as follows:

> The '575 Read/Read Patent discloses a multitasking

computer system which permits two or more software programs to be read simultaneously from two or more optical discs – a function referred to in the '575 Read/Read Patent, the '799 Read/Write Patent and their prosecution histories as "multitasking". The purpose of this claimed system is to alleviate some of the burden on a typical computer hard disk by performing some of the functions of the computer hard disk. The '799 Read/Write Patent goes one step further. It discloses a multitasking computer system in which all of the reading and writing functions of the computer hard disk are performed by optical discs, thereby eliminating the need for a hard disk in the computer.

The Paradigm Claims are limited to the multitasking computer systems disclosed in the IST Patents. Defendants' Paradigm Products are not computers. Rather, they are ordinary audio CD player/recorders which can only playback or record audio CDs. The undisputed material facts establish that Defendants' audio CD player/recorders do not infringe the Paradigm Claims because they: (1) do not carry out the multitasking function required by Claim 1 of the '575 Read/Read Patent and Claim 4 of the '799 Read/Write Patent; (2) do not transmit information to a host computer as required by Claim 1 of the '575 Read/Read Patent; (3) do not have the "data transmitting means" required by Claim 1 of the '575 Patent; and (4) do not have the "simultaneously controlling means" required by Claim 4 of the '799 Patent.

Simply put, plaintiff's effort to establish infringement by stereo equipment of patents designed to enhance performance of a computer by a strained reading of the specifications of the patents in suit fails. The special master correctly construed the claim-in-suit; these claims correctly read do not capture the accused devices.

For the reasons stated by the special master, as supplemented above, there is no genuine issue of material fact present here which requires trial. Accordingly, Accordingly, defendants' motion for summary judgment of invalidity is DENIED; defendants' motion for summary judgment of non-infringement is GRANTED; this case is DISMISSED.

SO ORDERED.

                         s/Avern Cohn                         
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  November 24, 2008

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 24, 2008, by electronic and/or ordinary mail.

                         s/Julie Owens                     
Case Manager, (313) 234-5160